959 So.2d 440 (2007)
Richard BLEVINS
v.
HAMILTON MEDICAL CENTER, INC. d/b/a Southwest Medical Center-Lafayette.
No. 2007-CC-127.
Supreme Court of Louisiana.
June 29, 2007.
*441 KNOLL, Justice.
This personal injury claim concerns a suit against a private hospital for injuries allegedly sustained when a hospital bed moved causing plaintiff to lose his balance and fall. The issue presented is whether plaintiff's claims fall within the Louisiana Medical Malpractice Act ("LMMA").
*442 At the same time plaintiff filed his petition, he contemporaneously requested a medical review panel based upon the same allegations in his petition. Before any discovery was conducted, the defendant hospital filed a dilatory exception of prematurity on the basis that the medical review panel had not yet deliberated. The district court denied the exception in part and sustained the exception in part, finding three of the allegations pertaining to the hospital bed sounded in general negligence, while the remaining six allegations sounded in medical malpractice, and severed the non-medical malpractice claims from the medical malpractice ones. The court of appeal reversed, sustaining the exception as to all of the allegations. We granted writs to address the correctness vel non of the court of appeal, i.e., whether the three allegations regarding plaintiff's hospital bed sound in general negligence or fall within the parameters of the LMMA. Richard Blevins v. Hamilton Medical Center, Inc., 07-0127 (La.3/23/07), 951 So.2d 1103. For the following reasons, we find these allegations sound in general negligence and reverse the judgment of the court of appeal.

FACTS AND PROCEDURAL HISTORY
This civil case originated with a petition for damages filed by plaintiff, Richard Blevins, in the Fifteenth Judicial District Court for the Parish of Lafayette on January 19, 2006, naming as defendant, Hamilton Medical Center, Inc., d/b/a Southwest Medical Center-Lafayette ("SMC"). In his petition for damages, plaintiff alleged that on or about January 11, 2005, he was admitted to SMC for incision and drainage of an infected wound of his left groin. On January 17, 2005, while still a recuperating patient at defendant's facility, plaintiff fell in his room when his hospital bed rolled as he attempted to get out of the bed to use a bedside commode. With the movement of the bed, plaintiff lost his balance and fell, causing a tear of the meniscus of his right knee.
In his petition, plaintiff also stated he had filed a request for a medical review panel to review the conduct of those individuals who participated and/or furnished medical care to plaintiff during his hospitalization with regard to his fall of January 17, 2005, and who were covered under the provisions of the LMMA.[1] Plaintiff further alleged that his fall was also proximately caused by the negligence and fault of defendant SMC in the following non-exclusive respects:
(a)Failing to properly monitor and provide adequate and necessary care to plaintiff;
(b)Failing to exercise the requisite amount of care toward a patient that the particular patient's condition required;
(c)Failing to protect a patient from the dangers that may result from the patient's physical and mental incapacities, as well as from external circumstances particularly within the hospital's control;
(d) Failing to have in force adequate policies, procedures and equipment to safeguard and prevent falls of patients such as plaintiff;
(e)Failing to exercise a reasonable degree of skill and competence possessed and required of hospitals;
(f)Failing to furnish the patient with diligent and skillful care; and
(g)Failing to furnish patient with equipment in proper working condition;
(h)Failing to keep the patient's bed in the lowest position with the wheels locked; and

*443 (i)Failing to properly instruct the patient on proper use of and safety with regard to his bed.
SMC, a qualified health care provider pursuant to the LMMA, filed a dilatory exception of prematurity to plaintiff's petition for damages on the basis that plaintiff's allegations raised in his petition for damages were identical to the allegations he raised in his request for a medical review panel, which panel had not yet deliberated nor rendered an opinion concerning the matter, and therefore, the lawsuit was premature.[2] Plaintiff answered that while some of his allegations fell within the purview of the LMMA, the district court was at liberty to determine which of plaintiff's allegations fell outside the LMMA's provisions and allow plaintiff to proceed in district court on those allegations of ordinary negligence.
The district court heard argument on defendant's exception and granted the exception as to the medical malpractice allegations (a) through (f), but denied the exception as to allegations (g) through (i), as those allegations sounded in ordinary negligence. By dismissing plaintiff's claims alleged in (a) through (f), the district court severed the malpractice claims from the ordinary negligence claims.
SMC applied for supervisory writs from the district court's denial of its exception of prematurity as to allegations (g) through (i). A five-judge panel of the Third Circuit Court of Appeal, with three judges signing, granted the writ and made it peremptory, reasoning:
The claims raised by Respondent are properly raised under the Medical Malpractice Act. La.R.S. 40:1299.41; Taylor v. Christus Health Southwestern Louisiana, 04-627 (La.App. 3 Cir. 11/10/04), 886 So.2d 696. Accordingly, we find error in the judgment rendered below and reverse. Relator's exception of prematurity is maintained, and Respondent's petition is dismissed without prejudice, at his cost.
Richard Blevins v. Hamilton Medical Center, Inc., 06-01270, p. 1 (La.App. 3 Cir. 12/22/06). Two judges dissented, with the following language:
We disagree with the majority opinion because the faulty equipment at issue is not intricately connected to the medical care provided by the hospital. Taylor v. Christus Health Southwestern Louisiana, 04-627 (La.App. 3 Cir. 11/10/04).[,] 866[886] So.2d 696 (Cooks, J., concurring). We would therefore deny the writ application as there was no error in the trial court's ruling.
Blevins, 06-01270 at p. 1. We granted plaintiff's writ application to address the correctness of the appellate court's decision regarding the hospital bed claims contained in allegations (g) through (i) of the petition.

LAW AND DISCUSSION
The dilatory exception of prematurity provided in La.Code Civ. Proc. art. 926 questions whether the cause of action has matured to the point where it is ripe for judicial determination as an action is premature when it is brought before the right to enforce it has accrued. Williamson v. Hospital Service Dist. No. 1 of Jefferson, 04-0451, p. 4 (La.12/1/04), 888 So.2d 782, 785(finding alleged negligence of hospital in failing to repair wheelchair and in failing to make sure that wheelchair was in proper working condition did not arise from "medical malpractice"); Spradlin *444 v. Acadia-St. Landry Medical Foundation, 98-1977, p. 4 (La.2/29/00), 758 So.2d 116, 119(alleged patient "dumping" case sounded in malpractice). Under the LMMA, a medical malpractice claim against a private qualified health care provider is subject to dismissal on a timely filed exception of prematurity if such claim has not first been reviewed by a pre-suit medical review panel. Williamson, 04-0451 at p. 4, 888 So.2d at 785; La.Rev. Stat. 40:1299.47(A). This exception is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for decision by a medical review panel before filing suit against the provider. Spradlin, 98-1977 at p. 4, 758 So.2d at 119; La.Code Civ. Proc. art. 926; Frank L. Maraist & Harry T. Lemmon, 1 Louisiana Civil Law Treatise, Civil Procedure § 6.6, 116 (West 1999). In such situations, the exception of prematurity neither challenges nor attempts to defeat any of the elements of the plaintiff's cause of action. Spradlin, 98-1977 at p. 4, 758 So.2d at 119; Maraist & Lemmon, supra. Rather, the defendant asserts that the plaintiff has failed to take some preliminary step necessary to make the controversy ripe for judicial involvement. Spradlin, 98-1977 at p. 4, 758 So.2d at 119; Maraist & Lemmon, supra. The burden of proving prematurity is on the exceptor, in this case the defendant health care provider, who must show that it is entitled to a medical review panel because the allegations fall within the LMMA. Williamson, 04-0451 at p. 4, 888 So.2d at 785.
While the grounds for the exception of prematurity clearly arise out of the LMMA's procedural requirement that a medical malpractice claim must first be reviewed by a medical review panel before the commencement of litigation, the dilatory exception of prematurity, which "merely retards the progress of the action," must be tried in the district court. La.Code Civ. Proc. arts. 923, 926 & 929. Moreover, unlike our Code of Civil Procedure, the LMMA provides no procedure for the trying of the exception before a medical review panel. See La.Code Civ. Proc. art. 929. Therefore, despite SMC's contention to the contrary, whether the matter should proceed to a review panel is a determination for the courts in the trial of the exception of prematurity, and not the yet to be convened panel.
Moreover, this court has, without exception, emphasized that the LMMA and its limitations on tort liability for a qualified health care provider apply strictly to claims "arising from medical malpractice," and that all other tort liability on the part of the qualified health care provider is governed by general tort law. Coleman v. Deno, 01-1517, pp. 15-16 (La.1/25/02), 813 So.2d 303, 315(finding claim for alleged wrongful transfer from one emergency room to another of patient whose left arm was amputated following transfer sounded in malpractice); Williamson, 04-0451 at p. 5, 888 So.2d at 786. This is so because the LMMA's limitations on the liability of health care providers are special legislation in derogation of the rights of tort victims, and as such, the coverage of the act should be strictly construed. Sewell v. Doctors Hospital, 600 So.2d 577, 578 (La.1992)(finding strict liability for defects in hospital bed which collapsed resulting in injury to patient was not included within "malpractice" under the LMMA). These limitations apply only in cases of liability for malpractice as defined in the LMMA. Williamson, 04-0451 at p. 5, 888 So.2d at 786.
The LMMA defines "malpractice" to mean
any unintentional tort or any breach of contract based on health care or professional *445 services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
La.Rev.Stat. 40:1299.41(A)(8). The LMMA further defines "tort" and health care":
"Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
"Health care" means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.
La.Rev.Stat. 40:1299.41(A)(7) & (9).
Cognizant of the principles espoused above, this Court in Coleman set forth six factors to assist a court in determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the LMMA:
(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
(3) whether the pertinent act or omission involved assessment of the patient's condition,
(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
(5) whether the injury would have occurred if the patient had not sought treatment, and
(6) whether the tort alleged was intentional.
Coleman, 01-1517 at pp. 17-18, 813 So.2d at 315-16.
As demonstrated by this court in Williamson, a court in its trial of the exception of prematurity analyzes the allegations of the petition under the Coleman factors to determine whether the allegations sound in medical malpractice and, thus, must proceed in accordance with the LMMA or sound in general negligence and, thus, should proceed under general tort law. Williamson, 04-0451 at p. 11, 888 So.2d at 789. Accordingly, we must apply the Coleman factors to the allegations of plaintiff's petition regarding his hospital bed, i.e., allegations (g) through (i), to determine whether those allegations fall outside the LMMA and would require defendant's exception of prematurity be denied.
At the outset, we note with significance this suit is one against a qualified *446 health care provider brought to recover for an injury allegedly sustained due to a patient's contact with faulty equipment, specifically when the plaintiff put pressure on an allegedly unlocked or defective bed, which rolled, causing plaintiff to lose his balance and fall. With this in mind, we turn now to an application of the Coleman factors.
Application of the Coleman Factors
(1) Whether the particular wrong is "treatment related" or caused by a dereliction of professional skill?
Although SMC asserts that the hospital bed, where a patient spends most of his time recovering, is integral to recovery and is intricately tied to the treatment of the patient, we find the particular wrong alleged, i.e., the furnishing of equipment not in proper working order, has nothing to do with the condition and associated treatment for which the plaintiff was hospitalized. Plaintiff fell and sustained a new injury to his knee when he put pressure on the bed that rolled and moved. He was hospitalized to treat an infection of the groin. These two separate and distinct events occurred independently of each other with one being treatment-related as to his groin infection and the other being an injury sustained by a fall caused by a bed that improperly rolled.
SMC further asserts that in order for SMC's staff to be able to provide for a safe and uneventful recovery, they need to be familiar with the equipment, which is knowledge they acquire in the education, training, and certification they must undergo to acquire their professional status. However, in this case, plaintiff alleges his hospital bed was either defective or someone did not lock the bed down as he should have. The locking or securing of a bed is something that is routinely performed by maintenance or housekeeping personnel or nurse's aides and failure to properly lock a bed does not result from any dereliction of professional skill that is treatment-related for the patient. SMC's interpretation of treatment-related would be very broadly applied which is contrary to the proper strict interpretation we are bound to give in that the LMMA is in derogation of a tort victim's rights. Thus, we find this factor weighs in favor of plaintiff's position that the allegations sound in general negligence.
(2) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached?
As to this factor, SMC asserts the act of properly equipping a hospital room involves a consideration of the actions and inactions of the nursing staff as well as hospital procedure, as does the failure to give proper instructions, which is one of the key roles of nurses. Thus, according to the defendant, expert testimony on nursing practices and hospital equipment may be relevant. However, as the locking or securing of a bed routinely falls to the maintenance staff or nurse's aides, we find no medical expert will be needed to determine whether locking a bed for a hospital patient is negligent or to determine the proper maintenance procedures regarding the bed. We find this factor as well weighs in favor of the plaintiff's position.
(3)Whether the pertinent act or omission involved assessment of the patient's condition?
Although SMC asserts the act of properly equipping a hospital room, the decision to keep the patient's bed in the lowest position with the wheels locked, and the proper instructions to give a patient on the use and safety of his bed all involve an examination of the assessment of plaintiff's *447 condition, we find the pertinent acts or omissions in this case do not implicate or require an assessment of a patient's medical condition. There is simply no showing that the failure alleged in this case even involved an assessment of plaintiff's condition by any hospital employee. Moreover, the condition for which the plaintiff was hospitalized and assessed has nothing to do with the omissions alleged, i.e., his groin infection has nothing to do with the failure to provide proper working equipment or to instruct the patient. Therefore, we find this factor weighs in favor of finding the allegations sound in general negligence.
(4) Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform?
SMC submits this factor is clearly met in this case because plaintiff was admitted to SMC for surgery and plaintiff's recuperation in a hospital bed and his transfer to and from a bedside commode during his recovery period occurred in the context of his admission at SMC. However, the alleged incident did not occur in the context of a physician-patient relationship or within the scope of activities the hospital is licensed to perform, but rather when the patient put pressure on the bed, which rolled causing him to fall. Again, we find analysis of this factor weighs in favor of plaintiff's position.
(5) Whether the injury would have occurred if the patient had not sought treatment?
SMC contends that beds and bedside commodes are solely for patients' use, but, as with the defective wheelchair in Williamson, it is just as reasonable to say that any visitor to the hospital, even those not seeking treatment, who put pressure on this particular bed, could have suffered injury. See, Williamson, 04-0451 at p. 14, 888 So.2d at 791. Moreover, the injury sustained was a completely independent injury from the condition for which the plaintiff sought treatment, i.e., drainage of his groin infection. We find this factor, too, weighs in favor of finding the allegations sound in general negligence.
(6) Whether the alleged tort was intentional?
This factor is not an issue in this case as there are no allegations that the actions or inactions of SMC or its staff were intentional.
Although the defendant asserts plaintiff's allegations sound in medical malpractice or are so intertwined with his medical malpractice claims that they cannot be severed from those claims, we find the application of the Coleman factors demonstrate that the failure to provide a patient with equipment in proper working condition, to keep a patient's bed in the lowest position with the wheels locked, and to properly instruct a patient on proper use and safety with regard to his bed sound in general negligence as the wrongs alleged are not integral to the rendering of care and treatment by the health care provider to the patient in this case.
Moreover, as explained in Coleman, only plaintiff's claims "arising from medical malpractice" are governed by the LMMA, and all other tort liability on the part of the qualified health care provider is governed by general tort law. Coleman, 01-1517 at pp. 15-16, 813 So.2d at 315. Thus, plaintiff's claims of general negligence contained in allegations (g) through (i) are not entitled to the limitations or subject to the procedural requirements of the LMMA of first review by a pre-suit medical review panel, and should, as the district court *448 determined, be severed from his medical malpractice claims, contained in allegations (a) through (f), to proceed in accordance with general tort law.
Accordingly, under the Coleman test, plaintiff's allegations regarding his hospital bed are weighted in favor of our finding that these claims sound in general negligence and fall outside the purview of the LMMA, requiring the non-medical malpractice claims to proceed under general tort law. Therefore, we find the district court correctly denied the exception of prematurity as to those allegations and rightly severed the claims from those sounding in medical malpractice.

CONCLUSION
With the assistance of the Coleman factors, we have applied the LMMA's definition of medical malpractice to the allegations regarding plaintiff's hospital bed set forth in his petition, and we conclude that these claims do not fall within the provisions of the LMMA. Accordingly, we reverse the judgment of the court of appeal sustaining the exception of prematurity as to these claims and reinstate the judgment of the district court.

DECREE
For the foregoing reasons, we reverse the judgment of the court of appeal and reinstate the judgment of the district court.
REVERSED and REINSTATED.
VICTORY, J., dissents for the reasons assigned by WEIMER, J.
WEIMER, J., dissents and assigns reasons.
WEIMER, J., dissenting.
I respectfully dissent.
I begin with the wording of the applicable statutes.
"Malpractice" is defined in LSA-R.S. 40:1299.41(A)(8), which provides, in pertinent part: "any unintentional tort or any breach of contract based on health care . . . rendered, or which should have been rendered, by a health care provider to a patient." (Emphasis provided.) In the instant case, it is undisputed that the defendant hospital is a health care provider. "Tort" is defined, in part, as: "any breach of duty or any negligent act or omission proximately causing injury or damage to another." LSA-R.S. 40:1299.41(A)(7). (Emphasis provided.) Further, "`Health care' means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." (Emphasis provided.) These definitions are broadly drafted by the legislature, reflecting an intent to include many acts or omissions.
The definition of health care covers "any act or treatment." The definition is not limited to "treatment," but also encompasses "any act." A hospital does more than provide treatment for the patient; the hospital also acts during the patient's "medical care, treatment, [and] confinement" through its employees.
In the instant case, the plaintiff acknowledges seven of his ten allegations of negligence (listed in Blevins v. Hamilton Medical Center, Inc. d/b/a Southwest Medical CenterLafayette, 07-1275, slip op. at 2-3 (La.3/23/07), 951 So.2d 1103, 1103) fall within medical malpractice and, as such, are subject to the medical malpractice act. Unlike the majority, I believe the plaintiff's three other allegations also fall within the medical malpractice act and that all the allegations are so intertwined with each other that the entire matter should *449 be referred to a medical malpractice panel for review.
Failure to furnish the patient with equipment in proper working condition, failure to keep the bed in the lowest position with the wheels locked, and failure to instruct the patient on proper use of and safety with regard to his bed all implicate personnel at the hospital and specifically allege their failure to act.
The plaintiff's allegations at issue clearly implicate various acts performed or furnished, or which should have been performed or furnished, by a health care provider on behalf of a patient during the patient's medical care, treatment, or confinement. As such, these acts implicate health care. LSA-R.S. 40:1299.41(A)(9). "In general, any conduct by a hospital complained of by a patient is properly within the scope of the [Medical Malpractice Act] if it can reasonably be said that it comes within the definitions of the Act, even though there are alternative theories of liability." Richard v. Louisiana Extended Care Centers, Inc., 02-0978, pp. 11-12 (La.1/14/03), 835 So.2d 460, 467-468, quoting Rogers v. Synthes, Ltd., 626 So.2d 775 (La.App. 2 Cir.1993).
In Cashio v. Baton Rouge General Hospital, 378 So.2d 182 (La.App. 1 Cir.1979), the court of appeal correctly rejected the plaintiff's contention that the hospital was being sued solely as a premises owner and not as a health care provider. The court stated:
A plaintiff cannot control the progress and procedure of his claim by semantically designating one capacity of two or more belonging to the defendant as the desired one when the statute requires a procedure if the claim fits within its definition. That the duty breached is owed by an owner does not prevent the claim from being one against a health care provider and so subject to the procedure in the Act. A contrary conclusion would permit plaintiffs to avoid the application of the Act by alleging ownership of the premises by the hospital, a practically universal situation. We do not ascribe that intent to the legislature.
Cashio, 378 So.2d at 184-185.
Cashio effectively required that when claims which fall within the Medical Malpractice Act are intertwined with claims allegedly outside the Act, the entire matter will be referred to the medical review panel. "[A]ny conduct complained of should be handled under the procedure of the Act if it can be reasonably said that it comes within the definitions of the Act even though there may be alternative theories for liability." Cashio, 378 So.2d at 185.
I distinguish this matter from Williamson v. Hospital Service Dist. No. 1 of Jefferson, 04-0451 (La.12/1/04), 888 So.2d 782. Unlike Williamson, in which a wheelchair broke, the plaintiff's pleadings in the instant case do not allege the bed itself simply broke. Additionally, in Williamson the plaintiff had been discharged and was leaving the hospital. The patient's "medical care, treatment, [and] confinement" were concluded.
In Williamson, this court stated it did not necessarily disagree that the Medical Malpractice Act applied to the original unamended petition, which had included the allegations that the hospital employee failed to inspect the wheelchair and carelessly used the wheelchair to transport the plaintiff. However, as amended by the second supplemental petition, the plaintiff's claims were not covered by the Medical Malpractice Act because malpractice claims of the original petition were abandoned. In other words, had the petition, as amended, contained intertwined medical malpractice and non-medical malpractice allegations, the Medical Malpractice Act would have applied. The court observed *450 that the transportation of the patient in the wheelchair was not treatment related, although it recognized that a different result could be reached under different facts:
We find that the particular wrong alleged here, that the hospital negligently failed to repair the wheelchair and failed to insure that it was in proper working condition before returning it to service, is neither "treatment related" nor caused by a dereliction of "professional skill" within the meaning of the Medical Malpractice Act. The court of appeal reasoned that the transportation of a patient in a wheelchair as the patient is being discharged from the facility is part of the overall treatment of the patient, and is therefore "treatment related. While that reasoning might apply in a different case, the wrong complained of here is that the hospital negligently failed to repair the wheelchair and placed it back into service without verifying that it was properly repaired. Those acts are not directly related to, nor do they involve, "treatment" of this patient. [Emphasis added.]
In contrast to Williamson, where the plaintiff already had been discharged from the hospital, plaintiff's injuries in the instant case were the result of use of the bed which was necessary to his on-going treatment at the hospital for his groin injury. Moreover, plaintiff does not allege his injuries were caused by the hospital's failure to properly repair or maintain the bed or other equipment. Rather, he alleges the hospital failed to furnish him with the proper equipment and failed to instruct him in the proper use of the equipment. These allegations to relate to the type of treatment the hospital provided him rather than to any condition of the equipment itself.
It is also significant that unlike the plaintiff in Williamson, the plaintiff in the instant case has made allegations which clearly fall within the scope of the Medical Malpractice Act.
In Sewell v. Doctors Hospital, 600 So.2d 577 (La.1992), a patient in a hospital was injured when his hospital bed collapsed. The patient specifically limited his action to strict liability for a defective thing under the defendant's custody. The patient did not allege any act or omission by the health care provider caused the bed to be defective or that the health care provider knew or should have known of the defects. In a footnote, the court stated:
Thus, a health care provider's liability may arguably be included under the Act when a patient is injured in a fall from the hospital bed because the provider's employee was negligent under the particular circumstances in failing to raise the sides, but the provider's liability may not be included under the Act when the patient is injured in a fall because the same bed collapsed from a metallurgical defect, unless the provider caused the defect or knew or should have known of the defect and neglected to repair it.
Sewell, 600 So.2d at 580 n. 6.
NOTES
[1] According to the petition, the request is presently pending.
[2] In its exception, SMC also explained that plaintiff had requested the appointment of David Cook as the attorney chairman for the panel and had received confirmation of the appointment of the attorney chairman by the Patient's Compensation Fund.