BROWN, C.J.
| defendant, St. Francis Specialty Hospital, filed a writ with this Court complaining of a judgment rendered on March 4, 2016, by the district court denying its motion for partial summary judgment as to *247 some of plaintiffs’ claims against defendant. This Court granted the writ and converted it to the instant appeal.
For the reasons set forth below, we affirm the ruling of the lower court.
Facts and Procedural History
Plaintiffs, Alice Cumpton, Leo Burgess Cumpton, II, and Melissa Cumpton Morris, are the wife and two adult children, respectively, of Leo Burgess Cumpton (“Mr. Cumpton”), a patient of defendant hospital in this case. Defendant, St. Francis Specialty Hospital, Inc. (“LTAC”), is the extended care facility where Mr, Cumpton was admitted on August 2, 2013, for treatment of his long-term respiratory condition.
Upon admittance to LTAC, Mr. Cump-ton was assessed by nurse practitioner Penny Montcalm (“Nurse Montcalm”) to determine the best means of treating Mr. Cumpton’s pre-existing pressure ulcers. Nurse Montcalm decided that Mr. Cump-ton needed a special mattress on a standard-sized bed frame to address the pressure ulcers. At the time, Mr. Cumpton was six feet, three inches in height and weighed 225 lbs. Mr. Cumpton’s wife, Alice, repeatedly requested that her husband be placed in a bed that fit his size. Alice Cumpton testified that her husband’s feet were resting on top of or hanging over the footboard, and pillows were used to try to prop Mr. Cumpton up so that his feet would not hang over the end of the bed.
laOn August 7, 2013, a nurse found Mr. Cumpton on the floor of his room, presumably because he fell from his bed. Due to the fall, Mr. Cumpton suffered a hemato-ma to his chest wall requiring immediate surgery. Mr. Cumpton survived the surgery but died on August 20, 2013, from complications related to the hematoma.
On December 17, 2013, plaintiffs filed a complaint with the Louisiana Patients’ Compensation Fund (“PCF”). On December 18, 2013, plaintiffs filed a petition in the Fourth Judicial District Court alleging that LTAC was negligent in providing Mr. Cumpton with an inadequately-sized bed and in failing to properly supervise and monitor Mr. Cumpton. Plaintiffs amended their petition on January 27, 2014, to add a claim for medical malpractice under the Louisiana Medical Malpractice Act (“LMMA”).
LTAC filed a dilatory exception of prematurity as to plaintiffs’ petition on March 14, 2014, alleging that the conduct at issue, ordering a bed that was too short for Mr. Cumpton’s size and stature, was an allegation of medical malpractice and not negligence, requiring plaintiffs to first seek relief from the PCF. The trial court heard arguments on LTAC’s exception on July 29, 2015, and determined that the exception was moot. LTAC sought review from this Court; the writ was denied.[1]
LTAC requested permission to address the issue of whether the LMMA or general negligence principles applied to the case in a motion for partial summary judgment. The trial court allowed LTAC to do so, and LTAC filed its motion for partial summary judgment on August 28, 2015. LTAC argued that the issue of whether the alleged failure to provide Mr. |sCumpton with an appropriately-sized bed was an issue governed by the LMMA. Plaintiffs filed a memorandum in opposition to LTAC’s motion on October 2, 2015, arguing that the issue of bed size was subject to the rules governing general negligence actions.
The trial court held a hearing on the motion on October 14, 2015. The parties stipulated at that time that the allegations relating the failure to supervise and/or *248 monitor the patient were related to medical malpractice and were covered by the LMMA. Therefore, the parties only presented their arguments regarding LTAC’s alleged failure to provide an appropriately-sized bed to Mr, Cumpton. On March 4, 2016, the trial court issued its written ruling denying LTAC’s partial motion for summary judgment. The trial court considered the factors provided by the Louisiana Supreme Court in Coleman v. Deno, 01-1517 (La. 01/25/02), 813 So.2d 303, and found that, considering the factors in their totality, the conduct of failing to provide an appropriately-sized bed was governed by the rules of general negligence. LTAC then applied for supervisory review from this Court.
Discussion
Defendant argues that Nurse Montcalm’s failure to provide" Mr. Cump-ton with a properly-sized bed is really a claim that Nurse Montcalm failed to properly assess, diagnose, and/or stabilize Mr. Cumpton regarding his need for a longer bed frame. Defendant states that plaintiffs’ allegations are related to' the medical treatment Nurse Montcalm provided as part of Mr. Cumpton’s admission to LTAC.
Plaintiffs argue that providing Mr. Cumpton with an inappropriately-sized bed was not treatment-related and did not require professional skill to determine whether the bed Mr. Cumpton was placed in was too small for Lhim. Plaintiffs further argue that no medical evidence is necessary to explain to the factfinder that Mr. Cumpton needed a longer bed frame to accommodate his stature. Plaintiffs further argue that Mr. Cumpton was admitted to LTAC to treat his respiratory problems and to address his pressure ulcers, both of which were unrelated to the bed frame size Mr. Cumpton required.
This matter comes before the Court on the trial court’s denial of a motion for partial summary judgment. Appellate review of a motion for summary judgment is de novo. Billeaudeau v. Opelousas Gen. Hosp. Auth., 16-0846 (La. 10/19/16), 218 So,3d 513, 2016 WL 6123862. Summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. Proc. Art. 966(A)(3). Since the issue here is statutory interpretation of the LMMA, there is no genuine issue of material fact in dispute and the sole issue before the court is a question of law and the correct interpretation of the LMMA. Bil-leaudeau, supra.
For the LMMA to apply, the law requires that malpractice claims: (1) be made by a patient; (2) against a PCF qualified healthcare provider; and (3) relate to health care or professional services rendered. La. R.S. 40:1231.1 et seq.[2] The first two requirements are not in dispute in this case. The issue before this Court is a determination of whether the alleged failure of LTAC in providing Mr. Cumpton with an appropriately-sized bed is |fiencompassed within the LMMA’s definition of malpractice, i.e., whether this failure'is related to health care or professional medical services.
The LMMA defines malpractice in pertinent part as,
“[A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health *249 care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, [or] ... in the training and supervision of health care providers.... ”
The LMMA defines health care in pertinent part as,
“[A]ny act of treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s medical care, treatment, or confinement....”
La. R.S. 40:1231.1.
The Supreme Court has held that the LMMA should be strictly construed in favor of injured plaintiffs. Billeaudeau, supra; Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson, 04-0451 (La. 12/01/04), 888 So.2d 782. Only a plaintiffs claims arising from medical malpractice are governed by the LMMA and all other tort liability on the part of the health care provider is governed by general negligence law. Billeaudeau, supra. The Supreme Court enunciated six factors to assist the courts in determining whether certain conduct by a qualified health care provider comprises malpractice as defined under the LMMA in Coleman v. Deno, 01-1517 (La. 01/25/02), 813 So.2d 303. Those factors are:
(1) whether the particular wrong is treatment related or caused by a dereliction of professional skill;
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient’s condition;
|fl(4) whether an incident occurred in the context of the physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
(5) whether the injury would have occurred if the patient had not sought treatment; and
(6) whether the tort alleged was intentional.
Id. at 315-16.
Plaintiffs concede that the fifth factor, whether the injury would have occurred if the patient had not sought treatment, weighs in favor of defendant. Plaintiffs and defendant do not have a dispute as to the sixth Coleman factor, whether the alleged tort was intentional.

(1) Whether the particular wrong is treatment-related or caused by a dereliction of professional skill.

In Blevins v. Hamilton Med. Ctr., Inc., 07-127 (La. 06/29/07), 959 So.2d 440, the patient fell from a bed which was not properly locked down and was kept in the highest position; the bed rolled from underneath the patient causing him to fall and injure his knee. The supreme court in that case found that the reason the patient was being treated (a groin infection) was unrelated to the injury he sustained when the bed rolled out from underneath him. Id. The Court stated that the securing of a bed is an issue of routine maintenance performed by housekeeping or nurse’s aides and did not result from any dereliction of professional skill that was treatment-related. Id.
Mr. Cumpton was admitted to LTAC to recuperate from respiratory problems. In assessing Mr. Cumpton, Nurse Montcalm ordered a specialized mattress to aid Mr. Cumpton in the treatment of his pressure ulcers. Mr. Cumpton’s being too large for the bed which he was provided was unrelated to his respiratory problems or his pressure ulcers. Mr. |7Cumpton’s fall was *250 also unrelated to his respiratory condition, his pressure ulcers, or the type of mattress he was provided. Providing a patient with a bed that is the correct size for his height or weight requires no professional skill. Any hospital employee could have seen that Mr. Cumpton’s feet were on top of or hanging over the footboard of the bed he was assigned. This factor weighs in favor of plaintiffs.

(2) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached.

Expert medical evidence is not required to determine if a patient is in an appropriately-sized bed. A person need only use his or her eyes to make such a determination; even specific knowledge of the patient’s height and weight are unnecessary when the patient’s feet are seen on top of or hanging over the footboard of the bed. In Coleman, the Court observed that the case was not one in which the alleged wrongful conduct could be evaluated based on common knowledge and that expert testimony was needed to establish whether the standard of care for an emergency physician was breached. Id. at 317. In the instant case, common knowledge of how a person is supposed to fit into a bed is all that is required to determine if the standard of care was breached.
Additionally, when Nurse Montcalm was asked if she had specialized training on whether a patient is too large to fit in a bed, she answered, “no,” and said it was a matter of “common sense” about what type of bed a patient of a particular height and/or weight would need. When asked whether a patient needs a larger bed is something that a person could easily see or observe, Nurse Montcalm answered, “yes.” This factor weighs in favor of plaintiffs.

\h(8) Whether the pertinent act or omission involved assessment of the patient’s condition.

No assessment of Mr. Cumpton’s medical conditions, respiratory issues and pressure ulcers, was required to determine whether Mr. Cumpton needed a larger bed. LTAC asserts that Nurse Montcalm’s initial assessment of Mr. Cumpton took into account his height and weight in her determination of how to treat his pressure ulcers. That assessment was performed in order to determine solely what mattress to place Mr. Cumpton on, not what bed size Mr. Cumpton would need to fit his frame. See Blevins, 959 So.2d at 447. This factor weighs in favor of plaintiffs.

(If) Whether an incident occurred in the context of the physician-patient relationship or was within the scope of activities which a hospital is licensed to perform.

The alleged incident did not occur in the context of a physician-patient relationship or within the scope of activities that a hospital is licensed to perform, but rather occurred when Mr. Cumpton allegedly fell out of a bed which was too short for his frame. This factor weighs in favor of plaintiffs.
When examining the Coleman factors in their totality, the trial court was not in error and properly denied defendant’s motion for partial summary judgment.
Conclusion
For the above reasons, we AFFIRM the district court’s judgment and REMAND for further proceedings. Costs are assessed to defendant, St. Francis Specialty Hospital.

. See Alice Cumpton v. Specialty Extended Care Hosp. of Monroe, No. 50,437-CW.

. The legislature recodified and reorganized the LMMA in the 2015 legislative session. This provision was previously set forth in La. R.S. 40:1299.41. The pertinent sections of the law remain unchanged.