STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 0778

THOMAS GARNER, SR.

VERSUS

LOUISIANA MEDICAL MUTUAL INSURANCE COMPANY
(LAMMICO), TDC SPECIALTY INSURANCE COMPANY,
ADVANCED SURGICAL CARE OF BATON ROUGE, LLC,
JONATHAN TAYLOR, M.D., CHAD PAUL GAUTREAUX, CRNA,
KEVIN ANDERSON, M.D., AND GEHL DAVIS, M.D.

*DATE OF JUDGMENT:*    **MAR 2 9 2023**

ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE, STATE OF LOUISIANA
NUMBER 710676, SECTION 24

HONORABLE DONALD R. JOHNSON, JUDGE

* * * * * *

| | |
|---|---|
| Hannah E. Mayeaux<br>Damon L. Beard<br>Todd A. Townsley<br>Sage L. Middleton<br>Lake Charles, Louisiana | Counsel for Plaintiff-Appellant<br>Thomas Garner, Sr. |
| Brandon Ashley Sues<br>Sarah Spruill Couvillon<br>Alexandria, Louisiana | Counsel for Defendant-Appellee<br>Advanced Surgical Care of Baton<br>Rouge, LLC, and TDC Specialty<br>Insurance Company |
| Tara S. Bourgeois<br>Garrett S. Callaway<br>Jonathan E. Thomas<br>Baton Rouge, Louisiana | Counsel for Defendant-Appellee<br>Chad Paul Gautreaux, CRNA |

Vance A. Gibbs
Jason R. Cashio
Baton Rouge, Louisiana
and
Karen M. Fontana Young
New Orleans, Louisiana

Counsel for Defendant-Appellee
Jonathan Taylor, M.D.

L. Adam Thames
Ann Michelle Halphen
Amy Collier Lambert
Baton Rouge, Louisiana

Counsel for Defendant-Appellee
Kevin Anderson, M.D., and Gehl
Davis, M.D.

\* \* \* \* \* \*

BEFORE: GUIDRY, C.J., CHUTZ, AND HESTER, JJ.

**Disposition: AFFIRMED.**

2

**CHUTZ, J.**

Plaintiff-appellant, Thomas Garner, Sr., appeals the trial court's judgment sustaining a dilatory exception raising the objection of prematurity and dismissing his claims of medical malpractice against defendants-appellees, Advanced Surgical Care of Baton Rouge (Advanced Surgical Care), its alleged insurer, TDC Specialty Insurance Company, Jonathan Taylor, M.D., Chad Paul Gautreaux, CRNA, Kevin Anderson, M.D., and Gehl Davis, M.D., based on a finding that Garner filed this lawsuit in district court prior to review of his claims and rendition of an opinion by a medical review panel (MRP) as required under the provisions of the Louisiana Medical Malpractice Act (LMMA). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the allegations of his petition, 71-year-old Garner sought the surgical removal of bilateral shoulder lipomas. On August 14, 2020, Dr. Taylor undertook the surgical procedure at an Advanced Surgical Care facility. Shortly after surgery commenced, the procedure was aborted when a spark of a Bovie cautery (an electrosurgical device) ignited beneath the drapes and Garner's face caught on fire.

According to Dr. Taylor's operative report, the drapes were removed, and a scrub tech threw (what appeared to be) water onto Garner's face, quenching the flames. Saline and a bacitracin ointment were applied to Garner's face, and the surgical team cleaned and removed debris with gauze and saline. Dr. Taylor noted that Garner sustained burns to his face and bilateral checks/maxillary areas as well as to his upper and lower lips.

Garner was subsequently administered pain medication and transferred to the burn unit at Baton Rouge General Medical Center. He was discharged the

3

following day, on August 15, 2020, and continued to receive outpatient wound care.

On August 13, 2021, Garner initiated a claim with the Commissioner of the Division of Administration, requesting the formation of an MRP. That same day, Garner also instituted this lawsuit in district court, naming as defendants Advanced Surgical Care, its insurer, and Dr. Taylor. Additionally named as a defendant was Nurse Gautreaux, whom Garner alleged performed a pre-induction assessment of him; pre-oxygenated and sedated him; and drafted notes describing the surgery room events. Garner also named Dr. Anderson, the anesthesia provider (supervising anesthesiologist) noted at the bottom of Garner's anesthesia record, and Dr. Davis, an anesthesiologist who visited Garner, signed Garner's anesthesia consent form, noted the pre-operative and post-operative anesthesia orders, and initiated the pre-procedure check-in, as defendants in this lawsuit.[1]

In response to the lawsuit, these defendants filed dilatory exceptions subsequently filed dilatory exceptions raising the objection of prematurity, averring that because the MRP had not reviewed Garner's claims and rendered its opinion, Garner's petition had been initiated too early. After a hearing on February 7, 2022, the trial court sustained the exceptions and dismissed Garner's claims without prejudice. Garner appeals.

## DISCUSSION

The dilatory exception of prematurity provided for in La. C.C.P. art. 926(1) questions whether the cause of action has matured to the point where it is ripe for judicial determination. Under the LMMA, a medical malpractice claim against a

---

[1] Although Garner named as a defendant Louisiana Medical Mutual Insurance Company (LAMMICO), whom he averred is "a local insurance corporation," the petition is devoid of any other allegations against this defendant. While nothing in the appellate record shows an appearance by LAMMICO in this litigation, in correspondence to Garner from the Division of Administration it appears that Nurse Gautreaux and Drs. Anderson and Davis are insured by LAMMICO.

qualified health care provider is subject to dismissal on a timely exception of prematurity if the claim has not first been reviewed by a pre-suit MRP. In such situations, an exception of prematurity neither challenges nor attempts to defeat any of the elements of the plaintiff's cause of action but instead asserts that the plaintiff has failed to take some preliminary step necessary to make the controversy ripe for judicial involvement. The burden of proving prematurity is on the moving party who, in a medical malpractice case, must show entitlement to an MRP because the allegations fall within the scope of the LMMA. Whether a claim sounds in medical malpractice is a question of law reviewed de novo. See *Kelleher v. Univ. Med. Ctr. Mgmt. Corp.*, 2021-00011 (La. 10/10/21), 332 So.3d 654, 657.

Under La. R.S. 40:1231.8(B)(1)(a)(i) of the LMMA, no action against a health care provider under the LMMA, or against his insurer, "may be commenced in any court before the claimant's proposed complaint has been presented to [an MRP]." Any tort suit filed before completion of the MRP process is subject to dismissal on an exception of prematurity. *McDowell v. Garden Court Healthcare, L.L.C.*, 54,645 (La. App. 2d Cir. 8/10/22), 345 So.3d 506, 510, writ denied, 2022-01364 (La. 11/16/22), 349 So.3d 999, citing *Blevins v. Hamilton Med. Ctr. Inc.*, 2007-127 (La. 6/29/07), 959 So. 2d 440.

Each of the health-care-provider defendants placed into evidence certified copies of their respective certificates of enrollment with the Louisiana Patients Compensation Fund, thereby establishing that they are qualified health care providers subject to the protections and benefits of the LMMA. See generally La. R.S. 40:1231.2 (setting forth the requirements for a health care provider's qualification under the LMMA).

On appeal, Garner asserts that because the acts giving rise to his entitlement to damages occurred during a public health emergency, the provisions of the

5

Louisiana Health Emergency Powers Act (LHEPA), La. R.S. 29:760-775, apply to his claim rather than those of the LMMA. Garner suggests the LHEPA sets up a separate statutory scheme, which permits lawsuits for gross negligence and willful conduct. He maintains the effect of the LHEPA is to prohibit the liability of a health care provider from arising under the LMMA.

On March 11, 2020, Governor John Bel Edwards declared a public health emergency for the State of Louisiana due to the Covid-19 global pandemic. Within the declaration, the governor invoked the LHEPA. *Whitehead v. Christus Health Cent. La.*, 2021-764 (La. App. 3d Cir. 6/8/22), 344 So.3d 91, 94. Since the surgical procedure giving rise to Garner's injuries occurred on August 14, 2020, Garner has correctly pointed out that the provisions of LHEPA were in effect. According to La. R.S. 29:771(B)(2)(c)(i), "[d]uring a state of public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct."

Typically, the burden of proof that a plaintiff in a medical malpractice claim must establish by a preponderance of the evidence is as set forth in La. R.S. 9:2794(A) (i.e., the standard of care applicable to the defendant; that the defendant breached that standard of care; and there was a causal connection between the breach and the resulting injury). La. R.S. 29:771(B)(2)(c)(i), however, provides a "heightened burden of proof" against private health care providers during the event of a public health emergency. *Whitehead*, 344 So.3d at 94. Accord *Hebert v. Louisiana Med. Mut. Ins. Co. (LAMMICO)*, 2022-316 (La. App. 3d Cir. 10/26/22), 353 So.3d 846, 850. The "obvious purpose" of this modified burden of proof is the need "to allow health care providers to provide medical care and treatment during a time of public health crisis without concerns of liability for a

6

patient's poor outcome, unless the treatment decisions were grossly negligent, or the provider's misconduct was willful." *Whitehead*, 344 So.3d at 95. As the more specific statute, La. R.S. 29:771 prevails over the more general malpractice statutes during a state of public health emergency and provides the heightened burden of proof. *Id.*

Nevertheless, the LHEPA does not supplant the provisions of the LMMA. Under the provisions of the LMMA, La. R.S. 40:1231.1(A)(13) defines "malpractice" as follows:

> [A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions ... in the training or supervision of health care providers.

Given the definition set forth in La. R.S. 40:1231.1(A)(13), the courts of this state have determined that claims for the gross negligence of private health care providers are covered under the LMMA.[2] *Hebert*, 353 So.3d at 851-5, relying on *Whitehead*, 344 So.3d at 95, which cited *Wesco v. Columbia Lakeland Med. Ctr.*, 2003-0328 (La. App. 4th Cir. 9/10/03), 862 So.2d 997, 999, writ denied, 2004-0525 (La. 4/30/04), 872 So.2d 490 and *Flood v. Pendleton Mem'l Methodist Hosp.*, 2002-0440 (La. App. 4th Cir. 7/17/02), 823 So.2d 1002, 1013, writ denied, 02-2206 (La. 11/8/02), 828 So.2d 1121). Accord *McDowell*, 345 So.3d at 512-13.

Without disputing that all of the health-care-provider defendants are private health care providers and acknowledging that the recent state-court cases have concluded that claims for gross negligence against private health care providers are subject to the LMMA, Garner points out that the appellate decisions have

---

[2] Compare and contrast La. R.S. 40:1237.1-1240, the Medical Liability for State Services Act, which excludes claims of gross negligence in certain situations against state health care providers and other persons defined therein. See La. R.S. 40:1237.1(A)(9)(a)(iv)(cc); *Bryant v. Dep't of Health and Hosps.*, 2018-423 (La. App. 3d Cir. 1/16/19), 264 So.3d 521, 525-26, writ denied, 2019-264 (La. 4/8/19), 267 So.3d 614.

7

recognized that claims for intentional torts against private health care providers fall outside the ambit of the MMA. See e.g., *Hebert*, 353 So.3d at 850-5; *Whitehead*, 344 So.3d at 96; *McDowell*, 345 So.3d at 511. Based on the allegations of his petition, Garner maintains that he has asserted intentional torts against the health-care-provider defendants.

Not every unintentional tort committed by a qualified health care provider falls within the LMMA; only those "arising from medical malpractice." *McDowell*, 345 So.3d at 510, citing *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 2004-0451 (La. 12/1/04), 888 So.2d 782. The Louisiana Supreme Court has, without exception, emphasized the LMMA and its limitations on tort liability for a qualified health care provider apply strictly to claims "arising from medical malpractice," and all other tort liability on the part of the qualified health care provider is governed by general tort law. *McDowell*, 345 So.3d at 510, citing *Williamson*, 888 So.2d 782 and *Coleman v. Deno*, 2001-1517 (La. 1/25/02), 813 So.2d 303.

The Louisiana Supreme Court has set forth a six-factor test for determining whether particular conduct by a health care provider constitutes "malpractice" under the LMMA. These are:

> (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,

> (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,

> (3) whether the pertinent act or omission involved assessment of the patient's condition,

> (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,

> (5) whether the injury would have occurred if the patient had not sought treatment, and

8

(6) whether the tort alleged was intentional.

*McDowell*, 345 So.3d at 511.

On appeal, Garner does not make any assertions disputing that the first five factors result in a determination that his claim against each health-care-provider defendant sounds in medical malpractice under the LMMA. And our application of these factors to the allegations of Garner's petition confirms that. Since the injuries occurred during surgery, the cause of the fire and each health-care-provider defendant's role are treatment related inquiries. Clearly, the appropriateness of using the Bovie cautery device and each defendant's actions and responsibilities in its use requires medical expertise to establish whether any breaches in the standard of care occurred. In his petition, as to each health care provider Garner averred that the respective failure to "evaluate, assess, prepare, monitor, and treat" him before, during, and after the surgical procedure were breaches in medical standards. Importantly, these allegations show that the actions and omissions of each health-care-provider defendant in the events that caused Garner's injuries involved assessments of Garner's condition before, during, and after the attempted surgical procedure. That the fire giving rise to the burns on Garner's face occurred in the context of patient-health care provider relationships or was within the scope of a surgical procedure that Advanced Surgical Care was licensed to perform is an undisputed factor. Similarly, but for the undertaking of lipoma removal surgical procedure, Garner would not have had the injuries to his face. Thus, the first five factors show the conduct of each of the health-care-provider defendants constituted malpractice under the LMMA.

The issue of whether the allegations of each health-care-provider defendant's conduct set out in the petition suggest the intentional commission of torts against Garner also establishes Garner's claims sound in medical malpractice.

9

That Garner claimed each health-care-provider defendant's "willful, deliberate, and intentional choices" made "it predictable or substantially certain harm would occur" to him is insufficient to constitute an intentional tort.

An intentional act in this context has the same meaning as an intentional tort; that is, the person who acts either "(1) consciously desires the physical result of his act[;] or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Whitehead*, 344 So.3d at 96, quoting *Bazley v. Tortorich*, 397 So.2d 475, 481 (La. 1981).

Garner has not averred that any of the health-care-provider defendants consciously desired either the ignition below the drapes by a spark from the Bovie cautery or the burns to Garner's face. And the petition contains no allegations that any of the health-care-provider defendants knew either the ignition below the drapes by the spark from the Bovie cautery or the burns to Garner's face were substantially certain to follow because of any particularly-described conduct committed by one of the health-care-provider defendants. Garner has simply averred acts which occurred during a surgical procedure in conjunction with the administration of medical treatment. As such, Garner's petition fails to aver an intentional tort and the provisions of the LMMA apply, including review of his claims and rendition of an opinion by the MRP. Accordingly, the trial court correctly sustained the defendants' dilatory exceptions raising the objection of prematurity and dismissed Garner's lawsuit without prejudice.

## DECREE

For these reasons, the trial court's judgment is affirmed. Appeal costs are assessed against plaintiff-appellant, Thomas Garner, Sr.

**AFFIRMED.**

10