Judge Joy Cossich Lobrano
h Plaintiff, Darlene Watson as the administrator of the estate of John Lee (“Mr. Lee”), appeals the district court’s grant of an exception of prematurity in favor of the defendant, Woldenberg Village, Inc. (‘Wol-denberg”), based on its determination that the claims brought on behalf of Mr. Lee sound in medical malpractice and thus require a prior review pursuant to the Louisiana Medical Malpractice Act (“LMMA”), La. R.S. 40.1231.1 et seq. On appeal, Wol-denberg has raised a partial exception of prescription, alleging that plaintiffs first amended petition is time-barred. Because we find that the plaintiffs petition, as amended, alleges a claim of ordinary negligence that does not fall within the provisions of the LMMA, and that the first amended petition relates back to the timely original petition, we reverse the district court’s finding of prematurity, overrule the prescription exception, and remand the matter to the district court for further proceedings.
[.FACTS AND PROCEDURAL HISTORY
The relevant facts in this case are few and undisputed. Mr. Lee was admitted to Woldenberg Village nursing home on April 1, 2014, following surgery for a neck fracture which had resulted from a fall in his *320 home. He was assessed by staff as a fall risk, and therefore Woldenberg implemented its Fall Prevention Protocol with respect to Mr. Lee. This included the use of a personal protective alarm (“PPA”), a two-part device with a sensor designed to attach to Mr. Lee’s person, and a monitor designed to be fastened to his wheelchair, which would sound an alarm if Mr. Lee attempted to rise out of his wheelchair and walk unassisted. When properly installed, a PPA is placed so that a patient or resident cannot access either the clip or the alarm box itself, to prevent the resident from inadvertently setting off the alarm, or getting up without activating the alarm, and thus defeating its purpose. No evidence was submitted as to who specifically installed the monitor on the occasion in question. Plaintiff alleges the monitor was installed by an orderly, nurse’s aid, or an ordinary worker; according to the affidavit of Veronica Hixon, Director of Nursing at Woldenberg, the PPAs may be installed by nurses or Certified Nursing Assistants (“CNAs”).[1]
On April 15, 2014, following Mr. Lee’s visit to a recreational area to watch television, a nurse found Mr. Lee on the floor in the television room, where he had fallen with the alarm monitor in his hand (rather than securely fastened to the | ¡¡wheelchair), which had prevented the alarm from sounding when he attempted to get out of the wheelchair. Mr. Lee suffered injuries from the fall requiring hip surgery.
On September 8, 2014, plaintiff, the administrator of Mr. Lee’s estate, filed a petition for damages resulting from Mr. Lee’s fall. Woldenberg filed an exception of prematurity, contending that the claims sounded in medical malpractice and must first be submitted to a medical review panel. Plaintiff filed a first amended petition, after which the district court granted Woldenberg’s exception of prematurity in its judgment dated November 19, 2015. This appeal followed. Woldenberg’s appel-lee brief incorporated a partial peremptory exception of prescription, arguing that plaintiffs claims were time-barred because the amended petition was filed October 19, 2015, more than one year after the date of injury, and did not relate back to the original petition because there was no valid petition to which it could relate back. Thus, we are confronted with two issues on appeal: (1) whether the district court erred in finding that plaintiffs claims sound in medical malpractice and were thus premature; and (2) whether the first amended petition relates back to the initial petition or is instead time-barred.
DISCUSSION
The dilatory exception of prematurity is the procedural mechanism for challenging a cause of action on the grounds that it has not matured to the point where it is ripe for judicial determination. La. Code Civ. P. 926; Burandt v. Pendleton Mem’l Methodist Hosp., 2013-0049, pp. 5-6 (La.App. 4 Cir. 8/7/13), 123 So.3d 236, 240. An action brought before the right to enforce it has accrued is premature. Id., 2013-0049 at p.6, 123 So.3d at 240. Under the LMMA, a medical malpractice claim against a private qualified health care provider is subject to dismissal for prematurity if it has not first been presented to a medical review panel. Id., citing Williamson v. Hospital Serv. Dist. No. 1 of Jefferson, 2004-0451, p. 4 (La. 12/1/04), 888 So.2d 782, 785; La. R.S. 40:1237.2. However, the LMMA and its limitations on tort liability apply only to *321 claims “arising from medical malpractice;” all other tort liability on the part of the qualified health care provider is governed by general tort law. Burandt, 2013-0049 at p. 6; 123 So.3d at 241, citing LaCoste v. Pendleton Methodist Hosp. L.L.C., 2007-0008, 2007-0016, pp. 6-7 (La. 9/6/07), 966 So.2d 519, 524.
The burden of proving prematurity is on the exceptor, in this case Wolden-berg, who must show that it is entitled to a medical review panel because the allegations fall within the LMMA. Burandt, 2013-0049 at p. 6; see also, Blevins v. Hamilton Med. Ctr., Inc., 2007-127, p. 5 (La. 6/29/07), 959 So.2d 440, 444. And, because the LMMA is special legislation in derogation of the general rights available to tort victims, it must be strictly construed. LaCoste, 2007-0008, at p. 7, 966 So.2d at 524. Thus, any ambiguity regarding whether or not an alleged tort sounds in medical malpractice is resolved in favor of the plaintiff. Id.; Mineo v. Underwriters at Lloyds, London, 2007-0514, p. 4 (La.App. 4 Cir. 10/22/08), 997 So.2d 187, 191.
1 ¡^Because the issue of whether the claim sounds in medical malpractice is a question of law in this case, we conduct a de novo review of the grant of the exception of prematurity when it is brought on this ground. Burandt, 2013-0049 at p. 7, 123 So.3d at 241.
The LMMA defines “malpractice” as follows:
“Malpractice” means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care prorider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components/in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
La. R.S. 40:1231.1 A (13).
The LMMA defines “tort” and “health care” as follows:
“Tort” means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
“Health care” means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.
See La. R.S. 40:1231.1 A (22) and La. R.S. 40:1231.1 A (9), respectively.
| ^Moreover, nursing homes are qualified healthcare providers subject to the provisions of the LMMA. La. R.S. 40:1231.1(A)(10).[2]
*322 The principal issue before us in this appeal is whether the conduct complained of by plaintiff constituted malpractice so as to bring the claims within the ambit of the LMMA. As noted above, not every unintentional tort committed by a qualified health care provider falls within the LMMA; rather, the LMMA applies only to those “arising from medical malpractice.” Williamson, 2004-0451 at p. 5, 888 So.2d at 786. The Supreme Court has further observed that while a nursing home resident can always be said to be “confined” to the nursing home, the resident is not always receiving medical care or treatment for any specific condition. Richard v. Louisiana Extended Care Centers, Inc., 2002-0978, p. 12 (La. 1/14/03), 835 So.2d 460, 468. “[I]t was not the intent of the legislature to have every ‘act, ... by any health care provider ... during the patient’s ... confinement” in a nursing home covered by the MMA, Id, Rather, to be covered by the LMMA, the alleged negligent act must be related to the nursing home resident’s “medical treatment” under Louisiana law “rather than' 24-hour custodial shelter.” Id., at pp. 13-14, 835 So.2d at 469.[3]
|7In Coleman v. Deno, the Supreme Court outlined a six-part test to determine whether a negligent act falls within the LMMA. 2001-1517 (La. 1/25/02), 813 So.2d 303. The six Coleman factors are: (1) whether the particular wrong is “treatment related” or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient’s condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the tort alleged was intentional. Id. at pp. 17-18; 813 So.2d at 315-16.
Applying the Coleman factors to the instant case, we find that the complained of conduct in this case, namely the failure of an unspecified Woldenberg employee to securely attach a monitor to a wheelchair, resulting in Mr. Lee’s fall, does not allege a claim which sounds in malpractice, as set forth more fully below.
The first Coleman factor requires us to consider whether the particular wrong is *323 “treatment related” or caused by a dereliction of professional skill. 2001-1517 at p. 17, 813 So.2d at 315. The conduct in question in this case is the failure |8of a Wol-denberg employee to properly secure the alarm monitor to Mr. Lee’s wheelchair.[4] We find that attaching a monitor to a chair is not medical treatment, nor is the failure to properly do so a dereliction of medical skill. Many non-medical persons can accomplish this without-difficulty or specialized medical training. The PPA is a straightforward two-part device, whose proper installation requires only the common-sense action of placing the sensor on the patient and the monitor to the wheelchair, positioned so that it cannot fall off or be easily removed. As the Supreme Court has noted, a failure in executing a task which is routinely performed by nurse’s aides or other low-level employees cannot be said to be the result of a dereliction of medical skill that is treatment-related.[5]
The second factor is whether the alleged wrong requires expert medical evidence to determine whether the appropriate standard of care was breached. Coleman, 2001-1517 at p. 17, 813 So.2d at 315. We find that no medical expert is needed to determine whether a monitor is securely fastened to a wheelchair. Rather, the conduct at issue may be readily assessed on the basis of the common everyday experience of the trier of fact. We note specifically that the factfinder in this case is not required to determine whether in fact Mr, Lee was a fall risk, or 19whether a PPA should have been used in his case — that was established — but merely whether a simple piece of equipment was properly attached. There has been no showing that expert medical testimony will be necessary to answer this question; to the contrary, it may be resolved by observation and common sense.[6]
The third factor is whether the pertinent act or omission involved assessment of the patient’s condition. Coleman, 2001-1517 at p. 17, 813 So.2d at 315. There has been no allegation that Woldenberg failed to properly assess Mr. Lee, or that Mr. Lee’s fall was the result of a flawed medical assessment. Quite the opposite: Mr. Lee was assessed on admission and it was determined that Woldenberg’s Fall Risk Protocol applied to him and a PPA should’ be used. Thus, Woldenberg’s' employee was required to attach the PPA regardless'of Mr. Lee’s condition at"' any given time. While medical judgment' may have been exercised initially in identifying the risk of harm, once it was identified, and the Fall Protection Protocol put in place, failure of a low-level employee to follow through by executing a routine task is ordinary negligence.[7]
*324 hnThe fourth factor is whether the incident occurred in the context of physician/patient relationship, or was within the scope of activities which a hospital is licensed to perform. Coleman, 2001-1517 at p. 17, 813 So.2d at 316. In this case, the improper installation of the PPA occurred prior to Mr. Lee’s taking recreational time, and his fall occurred while watching television, not- while Mr. Lee was actively receiving medical treatment. Moreover, as reflected in the affidavit of Veronica Hix-on, Woldenberg’s Director of Nursing, installing the PPA is not done under the direction of a physician. Thus, the alleged negligent conduct did not occur in the context of a physician-patient relationship.
The fifth factor is whether the injury would have occurred if the patient had not sought treatment. Coleman, 2001-1517 at p. 18, 813 So.2d at 316. This factor is inapplicable to the case at bar, which arose in a nursing home context, because as noted, the injury occurred not during the course of treatment delivery, but during Mr. Lee’s custodial care in the home.
The sixth and final factor is whether the alleged tort was intentional. Id. There is no allegation that the tort allegedly committed by Woldenberg or its employee was intentional.
Applying the factors set forth in Coleman v. Deno, we conclude that the claims set forth in plaintiffs petition and first amended petition do not fall within luthe provisions of-the LMMA, and thus no submission of the claim to a medical review panel was required by the Act. Therefore, the action is not premature, and the district court erred in maintaining Wolden-berg’s prematurity exception.
We also reject Woldenberg’s argument that plaintiffs first amended petition is time-barred. In a partial peremptory exception of prescription, incorporated in its appellee brief, Woldenberg contends that the first amended petition, filed more than a year after Mr. Lee’s injury, cannot relate back to the original petition, because the original petition was premature and therefore invalid. Woldenberg’s argument rests on the premise (and the legal conclusion advanced by Woldenberg) that the allegations of the original petition sound solely in medical malpractice. However, our review of the original petition reflects that it contains straightforward negligence claims, including, inter alia, that Wolden-berg was negligent “for not properly securing ... residents,” which is also the essence of the first amended petition. “When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence *325 set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.” La. Code Civ. P. art 1153. As the Louisiana Supreme Court noted, article 1153 “requires only that the amending petition’s thrust factually relate to the conduct, transaction or occurrence originally alleged.” Duvio v. Specialty Pools Co., L.L.C., 2015-0423, p. 18 (La.App. 4 Cir. 6/16/16), — So.3d -, 2016 WL 3348855 amended on reh’g on other grounds, 2015-0423 (La. App. 4 Cir. 8/17/16), quoting Gunter v. Plauche, 439 So.2d 437, 440 (La.1983). In the case at |12bar, plaintiffs first amended petition clearly arises out of the conduct and occurrence set forth in the original pleading.
Moreover, this finding is consistent with the fundamental purpose of prescription, which is “to afford a defendant economic and psychological security if no claim is made timely, and to protect him from stale claims and from the loss of non-preservation of relevant proof.” Giroir v. S. Louisiana Med. Ctr., Div. of Hosps., 475 So.2d 1040, 1045 (La. 1985). Where an original timely pleading provides a party with actual notice that a formal claim is being made based on a particular factual situation, permitting relation back of a post-prescriptive amendment based on the same factual situation does not violate any essential purpose of a prescriptive statute. Baker v. Payne and Keller of La., Inc., 390 So.2d 1272, 1275 (La. 1980). This is because “[tjhrough the original pleading, the [defendant] knows that judicial relief is sought from the general factual situation alleged and [it] is put on notice that [its] evidence concerning [that factual situation] should be collected and preserved.” Id. (internal quotations omitted). In sum, prescriptive statutes “are designed to protect [defendants] against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that [an] opponent makes in filing the formal claim within the period.” Giroir, 475 So.2d at 1045. In the case at bar, plaintiff’s first amended petition arises from the same conduct and occurrence as the original petition. It gave defendant fair notice of the fact situation from which it arose, and it does not seek to substitute parties, add defendants, or anything else that would prejudice | iadefendant. Accordingly, we find that plaintiffs first amended petition relates back to the original petition, and plaintiffs negligence claims against Woldenberg are not time-barred. Wolden-berg’s incorporated exception of prescription is therefore overruled.
CONCLUSION
For all of the foregoing reasons, we find that the district court erred in sustaining the defendant’s exception of prematurity and dismissing the plaintiffs claim. Further, we overrule Woldenberg’s prescription exception. Therefore, the judgment of the district court is reversed and this matter is remanded to the district court for further proceedings.
JUDGMENT REVERSED; EXCEPTION OVERRULED; REMANDED.

. Ms. Hixon’s affidavit also explained that the use of PPAs increased beginning in the 1990’s as part of a trend away from using restraints, due to a concern about the safety of the restraints and the belief that they undermined patients’ dignity.

. Nursing homes were brought into the ambit of the LMMA as qualified healthcare providers in 2001. 2001 La. Acts, No. 108. At that time, nursing home residents also had a pri *322 vate right of action to recover actual damages for violations of the Nursing Home Bill of Rights ("NHBR"), La. R.S, 40:2010.9. A claimant could maintain separate actions under both the LMMA and the NHBR, and only those sounding in malpractice were subject to a medical review panel. See Hendrix v. Maison Orleans I, L.L.C., 2011-1349, p. 13 (La.App. 4 Cir. 9/26/12), 101 So.3d 1013, 1022. However, in 2003, the legislature amended the NHBR to eliminate a claimant's right to seek monetary damages, limiting a claimant’s remedies under the NHBR to injunctive relief. 2003 La. Acts, No. 506, Thus, as in the present case, claims brought for negligence by nursing home residents that do not sound in malpractice are considered under general negligence law.

. This principle comports with the rationale for the LMMA. As the Supreme Court has observed on numerous occasions, the legislature "enacted the Medical Malpractice Act in 1975 in response to a ‘perceived medical malpractice insurance "crisis.' ” Williamson, 2004-0451 at p. 4, 888 So.2d at 785, quoting Hutchinson v. Patel, 93-2156 (La. 5/23/94), 637 So.2d 415, 419; and citing Butler v. Flint Goodrich Hosp., 607 So.2d 517, 521 (La. 1992); Galloway v. Baton Rouge Gen. Hosp., 602 So.2d 1003, 1005 (La. 1992); Everett v. Goldman, 359 So.2d 1256, 1261 (La. 1978). "The legislature intended the Act to reduce or stabilize medical malpractice insurance rates . and to assure the availability, of affordable medical services to the public.” Id, Its purpose was not to insulate nursing homes from liability resulting from their delivery of custodial care.

.Defendant argues that the particular wrong in this case was the alleged failure to adequately supervise a patient who had experienced a prior fall and was receiving skilled nursing services. To the contrary, Plaintiff's first amended petition alleges that “the orderly or aide whom [sic] should have attached the monitor to the chair instead placed the monitor on the chair but did not securely affix it to the chair so that it could not be moved from the chair.” As well, the first amended petition alleges that “[this] event which precipitated the injury was not an error of professional medical judgment but just a simple lack of basic knowledge on the part of an employee, such as an orderly, nurse’s aid or just an, ordinary worker who didn't properly place the devices.”

. See Blevins, 2007-127 at p. 9, 959 So.2d at 446.

. See Blevins, 2007-127, p. 9, 959 So.2d at 446 (noting that when a task is routinely executed by low-level employees, a medical expert is not needed to determine if it was properly done).

. The Fifth Circuit addressed an analogous set of facts in Jordan v. Stonebridge, L.L.C., 03-588 (La.App. 5 Cir. 11/25/03), 862 So.2d *324 181. In that case, the resident’s Plan of Care required two orderlies to transfer him from his wheelchair to his shower chair, due to his size and condition. The resident fell and was injured when a single orderly attempted to move him. The Fifth Circuit held:
The negligent act in this case does not require medical evidence to determine whether the standard of care was breached. The Plan of Care stated that two orderlies were to assist, one on each side, in the transfer of Jordan from his wheelchair. Yet; on the day in question, only one orderly was assisting this 310 pound man who only had use of one leg. No assessment of Thomas’ condition was required. The requirement of two orderlies was not judgment-related based on Thomas’ condition on any given day. It was a constant requirement because of his size and the uselessness of his left side due to previous strokes. The incident was not related to a physician-patient relationship. It occurred in the routine transfer, by staff, of Thomas from his wheelchair to his shower chair. Therefore, we find that the alleged negligent act herein, mishandling of the patient in a routine transfer from his wheelchair to his shower chair, was in the course of his 24-hour custodial care at Stonebridge rather than part of medical treatment and does not come under the MMA.
Jordan, 03-588 atp. 6, 862 So.2d at 184.