PATRICIA PHOENIX      *      NO. 2021-C-0497

VERSUS      *

DAVID A. BEARY, M.D. AND      *      COURT OF APPEAL
ABC INSURANCE COMPANY      FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

**\* \* \* \* \* \* \***

APPLICATION FOR WRITS DIRECTED TO
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 20-1503, DIVISION "E"
Honorable Eric A. Bopp,
\* \* \* \* \* \*
**Judge Regina Bartholomew-Woods**
\* \* \* \* \* \*

(Court composed of Judge Terri F. Love, Judge Regina Bartholomew-Woods,
Judge Paula A. Brown)

Thomas J. Eppling
Michael W. Maldonado
Staines, Eppling, & Kenney
3500 North Causeway Boulevard, Ste. 820
Metairie, LA 70002

       COUNSEL FOR RELATOR/DEFENDANT

Randy Joseph Dukes
Law Office of Randy J. Dukes, LLC
701 Loyola Avenue, Ste. 58816
New Orleans, LA 70158

       COUNSEL FOR RESPONDENT/PLAINTIFF

       **WRIT GRANTED; RELIEF DENIED**

       **October 13, 2021**

*RBW*

*TFL*

*PAB*

This Court is in receipt of a supervisory writ filed by Relator-Defendant, David Beary, M.D. The issue before this Court is whether a slip and fall personal injury case which occurs in a medical office needs to be submitted to the medical review panel in compliance with the Louisiana Medical Malpractice Act or lies in general tort.

For the reasons that follow, we grant the writ, but deny relief.

## Factual & Procedural History

On December 26, 2019, Plaintiff-Respondent, Patricia Phoenix ("Respondent"), visited, for the first time, Defendant-Relator, David A Beary's, M.D. ("Relator") office for a gastrointestinal examination and consultation. During the visit, but prior to examination, Relator instructed Respondent to climb onto the examination table using the stepstool that was attached to the table. As Relator attempted to climb onto the table, she fell backwards off of the stepstool. As a result of the fall, Relator claims that she sustained a closed fracture to the right tibial plateau of her leg.

1

On December 4, 2020, Respondent filed with the 34th Judicial District Court, a Petition for Damages and Personal Injuries against Relator and an unnamed insurance company. Respondent claimed that "the sole and proximate cause of her injuries was the negligence" of Defendant-Relator, and that he breached his duty and standard of care in the following ways:

- Breaching his duty and standard of care by failing to take sufficient care and precaution to ensure that [Relator] would be safe from injury while visiting his office;

- Breaching his duty and standard of care by failing to inquire whether Plaintiff required assistance in climbing onto the examination table;

- Breaching his duty and standard of care by failing to provide handrails or any other support structure, to assist [Relator] in climbing onto the examination table thus preventing a fell from occurring;

- Breaching his duty and standard of care by falling to have his support staff assist Plaintiff onto the examination table, thus preventing her from falling:

- Breaching his duty and standard of care by failing to professionally train his staff to assist patients onto the examination table, thus preventing injuries; and

- Any and all other acts of negligence and/or imprudence and/or lack of care, which may be proven during the litigation process and/or trial of this matter.

On April 16, 2021, Relator filed an Exception of Prematurity asserting that Respondent's claim arose strictly from medical malpractice and should have been submitted to a medical review panel, as required by the Louisiana Medical Malpractice Act.

On July 23, 2021, following a hearing on Relator's exception, the trial court denied the exception, reasoning that Respondent's petition was sufficient to establish that the allegations fell outside of the scope of the Louisiana Medical Malpractice Act.

This writ timely followed.

**Discussion**

*Assignment of Error and Issues for Review*

Relator asserts the following assignments for error:

1. The trial court erred when it held that Respondent's allegations in the Petition for Damages and Personal Injuries did not assert a medical malpractice claim;

2. The trial court erred when it denied Relator's Dilatory Exception of Prematurity finding that Respondent's Petition for Damages and Personal Injuries was not premature.

Relator presents the following issues for review:

1. Whether Respondent's allegations in her Petition for Damages and Personal Injuries assert a medical malpractice claim against Relator, requiring she file with a medical review panel under the Louisiana Medical Malpractice Act;

2. Whether Respondent's Petition for Damages and Personal Injuries is premature.

*Standard of Review*

The dilatory exception of prematurity contends a cause of action has not yet matured to the point where it is ripe for judicial determination. *LaCoste v. Pendleton Methodist Hosp.*, L.L.C., 2007-0008, p. 6 (La. 9/5/07), 966 So. 2d 519, 523. Generally, a trial court's ruling on an exception of prematurity is reviewed under the manifest error standard. *Landis Const. Co., LLC v. Reg'l Transit Auth.*, 2015-0854, p. 6 (La. App. 4 Cir. 5/25/16), 195 So. 3d 598, 602. However, when resolution involves a question of law, the ruling is reviewed de novo. *Id.*

The issue before this Court centers on whether Respondent's case constituted a medical malpractice case requiring the application of the Louisiana Medical Malpractice Act.[1] Whether a claim should be considered medical malpractice or general tort is a question of law; therefore, the de novo review is

---

[1] At this juncture in the lawsuit, the facts are not in dispute.

3

appropriate. *Burandt v. Pendleton Mem'l Methodist Hosp.*, 2013-0049, p. 6 (La. App. 4 Cir. 8/7/13), 123 So. 3d 236, 241.

*Analysis*

Pursuant to the Louisiana Medical Malpractice Act ("LMMA"), when a medical malpractice claim is brought against a private qualified health care provider, it is subject to dismissal on a timely filed exception of prematurity, if the claim has not first been reviewed by a pre-suit medical review panel. La. R. S. 40:1299.47(A). The burden of proving prematurity falls upon the party seeking the exception. *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 2004-0451, p. 4 (La. 12/1/04), 888 So. 2d 782, 785. The LMMA is strictly applied to claims arising out of medical malpractice. *Id*. at 786. All other claims are subject to general tort law. *Id*.

Relator avers that because all of Respondent's claims relate to how Relator breached his duty of care rather than addressing the defective stool this is a medical malpractice case. Notwithstanding Relator's reasoning this Court is not swayed by this argument because not every tort occurring in the medical field is subject to the LMMA. *Richard v. Louisiana Extended Care Centers, Inc.*, 2002-0978, p. 13 (La. 1/14/03), 835 So. 2d 460, 468.

Louisiana jurisprudence weighs six (6) factors when determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the LMMA:

1. Whether the particular wrong is treatment related or caused by a dereliction of professional skill,
2. Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, and
3. Whether the pertinent act or omission involved assessment of the patient's condition.

4

4. Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,

5. Whether the injury would have occurred if the patient had not sought treatment, and

6. Whether the tort alleged was intentional.

*Coleman v. Deno*, 2001-1517, p. 17-18 (La. 1/25/02), 813 So. 2d 303, 315–16 (citations omitted). Accordingly, each factor shall be weighed to determine whether the LMMA is applicable for the instant case.

### 1. *Whether the Particular Wrong is Treatment Related or Caused by a Dereliction of Professional Skill.*

To determine whether the particular wrong, in this case an unsecured stepstool, was treatment related or the result of a dereliction of skill; the Louisiana Supreme Court considers:

- Whether the furnished equipment was related to the condition being treated, and

- Whether the action results from any dereliction of professional skill that is treatment-related for the patient.

*See Blevins v. Hamilton Med. Ctr., Inc.*, 2007-127, 8-9 (La. 6/29/07), 959 So. 2d 440, 446. In *Blevins* a patient brought suit after sustaining injuries when an unsecured hospital bed moved causing the patient to lose balance and fall. The Court found that even though the patient was required to use the bed as part of the hospital stay, the bed was not a necessary part of the patient's treatment for a groin infection. *Id*. The Court further found that properly securing a bed was not the result of a dereliction of a treatment-related professional skill. *Id*.

Similarly, this Court when considering the same factors interpreted "treatment related" and "professional skill" to refer to whether the act was part of the medical treatment sought and whether the alleged negligent act or omission

5

required professional skill or specialized medical training. *Watson v. Woldenberg Vill., Inc.*, 2016-0159, p. 8 (La. App. 4 Cir. 10/5/16), 203 So. 3d 317, 322–23.

In Watson, this Court ruled that injuries sustained by a nursing home patient who fell from a wheelchair was not a medical malpractice claim. *Id.* at 319. When weighing the first *Coleman* factor, this Court reasoned that the staff's failure to properly secure a monitor which provided an alarm when a patient fell was not a dereliction of skill because the monitor could easily be attached by "[m]any non-medical persons" without the need for special training. *Id.* at 323. This Court further explained, "a failure in executing a task which is routinely performed by nurse's aides or other low-level employees cannot be said to be the result of a dereliction of medical skill that is treatment-related." *Id.* citing *Blevins*, 959 So.2d at 446.

Relator insists Respondent's injury is treatment related because she was in the examination room for medical treatment and was instructed to use the stepstool. Relator relies on *Harris v. Sternberg*, wherein this Court ruled that a patient's fall when stepping onto a scale and subsequent injuries were medical malpractice such that LMMA applied. 2001-1827, p. 6 (La. App. 4 Cir. 5/22/02), 819 So. 2d 1134, 1138. However, we find that Relator's reliance on *Harris* is misplaced. This Court specifically noted in *Harris* that the patient was seeking treatment regarding weight management; therefore, stepping on a scale was a necessary part of the treatment. *Harris*, 819 So. 2d. at 1138.

We find the *Harris* case distinguishable from the instant case in three (3) ways: first, even though Respondent was in the examination room, treatment had not begun; second, the stepstool was not a necessary tool needed for the treatment, but merely a device to aid in rising onto the examination table; and third,

6

Respondent was seeking treatment for gastrointestinal issues, for the first time, with Relator and the stepstool was not a necessary instrument for her treatment.

Furthermore, there is no allegation that attachment and use of the stepstool had to be accomplished or monitored by professionally trained medical staff. In consideration of the above, this factor weighs in favor of not applying LMMA.

### 2. Whether the Wrong Requires Expert Medical Evidence to Determine Whether the Appropriate Standard of Care Was Breached

Relator next asserts medical expert testimony may be necessary to establish custom regarding how other local healthcare providers provide assistance for climbing onto an examination table. In *Blevins*, the court reasoned that because securing the bed was routinely part of the maintenance staff's duties, there was no need to consult a medical expert on whether failing to lock the bed was medical malpractice or to determine proper maintenance procedures. 959 So. 2d at 446. This Court, in *Watson* reasoned there was no reason to consult medical experts regarding whether the fall monitor was properly secured because, "the conduct at issue may be readily assessed on the basis of the common everyday experience of the trier of fact." 203 So. 3d at 323. The determination of whether equipment was properly attached could be resolved by observation. *Id*.

In the current case, Respondent explained she was not provided aid in using the stepstool and the stepstool did not have handrails or other supporting devices. Respondent was allegedly not asked and did not volunteer if she needed assistance getting onto the table. The type of equipment used to aid in climbing onto an examination table and whether that equipment has adequate support devices may need to be established by medical expert opinion regarding common practice and the equipment used because the stepstool was allegedly attached to the

7

examination table. In this case, however, there has been no allegation that the stool used was unusual or different from common practice and claims regarding how it should be assembled - on the surface - seems to be easily resolved by observation, or even the attachment of the stool's assembly instructions as evidence in the case. Without factual support that this particular stool is medically necessary equipment requiring assembly by trained medical personnel, to which there are none, this factor weighs in favor of not applying LMMA.

### 3. Whether the Pertinent Act or Omission Involved Assessment of the Patient's Condition

In considering this factor, the court must determine whether the harmful act or omission was required as part of the assessment of the patient's condition. *Blevins*, 2007-127, p. 9-10 (La. 6/29/07), 959 So. 2d at 447. Relator asserts Respondent's use of the stool was a required step in the assessment because the purpose of having Respondent climb onto the table was to perform the assessment. However, Relator does not allege the stepstool is a necessary assessment tool and fails to provide any facts evincing why using a stepstool in necessary for the assessment of gastrointestinal problems. This factor weighs in favor of not applying LMMA.

### 4. Whether the Incident Occurred in the Context of a Physician-Patient Relationship, or Was Within the Scope of Activities Which A Hospital Is Licensed To Perform

Respondent was in the process of seeking medical treatment for the first time from Relator. Even though the examination had yet to begin, Respondent was actively following Relator's directions at the time of her injury in preparation for an examination. "Nothing in the plain language of the [L]MMA limits its application to direct treatment by a physician." *Blazio v. Ochsner Clinic Found.*,

8

2019-0753, p. 7 (La. App. 4 Cir. 3/4/20), 294 So. 3d 36, 42, *writ denied*, 2020-00732 (La. 10/6/20), 302 So. 3d 530. (citing *Dupuy v. NMC Operating Co.*, 15-1754, p. 11 (La. 3/15/16), 187 So.3d 436, 443). In *Blazio*, this Court reasoned that set-up and care for equipment, even if such acts are not performed by medical staff falls within the definition of healthcare such that a physician-patient relationship existed. *Id*. This factor differs from the first *Coleman* factor because the court does not make a determination of whether the equipment was necessary for treatment but rather looks to whether the healthcare provider offers the equipment in service of medical care. *See Id*.

This Court has further reasoned that seeking out medical treatment and the steps taken at the medical office in preparation of that treatment – even if treatment has yet to or does not occur – establishes a physician-patient relationship. *Talbert v. Evans*, 2011-1096, p. 8 (La. App. 4 Cir. 3/7/12), 88 So. 3d 673, 678; *Harris*, 2001-1827, p. 9, 819 So. 2d at 1140. In *Talbert*, the patient was given a prescription written on a pre-signed pad. *Id*. The physician had never examined the patient or even met with the patient during the visit. *Id*. at 675. The prescription was written out by a physician's assistant and no further examination or questioning was performed by the doctor. *Id*. This Court ruled that even though the physician never met with the patient, a physician-patient relationship existed because the physician was the operator of the clinic and his name on the pre-signed scripts.

The current case is distinct from the previously cited cases because, the patients in the cited cases received some type of care or assessment prior to the injury, even if the acts were not performed by the physician. This Court, however, cannot ignore the fact that Respondent was following Relator's instructions in

9

anticipation of receiving the care she sought out. Based on the aforementioned jurisprudence, we find that a physician-patient relationship existed in this case. Thus, this factor weighs in favor of applying LMMA.

### 5. *Whether the Injury Would Have Occurred if the Patient Had Not Sought Treatment*

Relator argues that Respondent admitted this factor in pleadings with the statement "[b]y necessity, [Respondent]'s claim would not exist had she not visited [Relator]'s office." Respondent's admission does immediately decide this factor because this factor is not about whether the patient needed to seek treatment, or if the patient could have been injured in the same manner at some other location. The Court considers whether anyone visiting the premises, "even those not seeking treatment," and used the equipment could have suffered injury. *Blevins*, 2007-127, p. 11, 959 So. 2d at 447; *Williamson*, 2004-0451, p. 14, 888 So. 2d at 791.

The stepstool was not a necessary part of Respondent's treatment, and her fall was not related to her treatment or even the reason she sought treatment. Respondent fell because she stepped onto the stepstool and lost her balance. Any person, whether they were seeking medical treatment or not could have fallen from the stepstool. A colleague or friend visiting Relator and choosing to sit on the examination table for whatever reason could just as easily have fallen from the stepstool just as Respondent did. This factor weighs in favor of not applying LMMA.

### 6. *Whether the Tort Alleged Was Intentional*

There is no allegation or evidence to support a finding that Relator acted with the intent to harm Respondent. This factor is not an issue in this case and therefore weighs in favor of not applying LMMA.

## Conclusion

Overwhelmingly, when applying the *Coleman* factors, we find that they were not met such that the LMMA applies to the instant matter. Respondent's fall and subsequent injury were neither treatment-related nor caused by dereliction of professional skill. Expert medical evidence is likely unnecessary to determine whether the appropriate standard of care was breached. Respondent's use of the stool to climb on the table did not involve assessment of her condition. The injury could have happened to anyone using the stepstool regardless of whether the individual was seeking medical treatment. There is no allegation that either Relator or Respondent acted with an intent to cause harm. We, therefore, conclude that the trial court did not err in denying Relator's Exception of Prematurity.

For the forgoing reasons, the writ is Granted, but relief is Denied.

**WRIT GRANTED; RELIEF DENIED**