LISA RICHARD, BRENDA LEMOINE, LORI GUITIERREZ, RICHARD TROXCLAIR AND DAVID TROXCLAIR INDIVIDUALLY AND ON BEHALF OF SYLVIA TROXCLAIR (DECEASED)

VERSUS

NOTRE DAME HEALTH SYSTEM AND CHATEAU DE NOTRE DAME FACILITIES CORPORATION D/B/A OUR LADY OF WISDOM HEALTH CARE CENTER, JOHN DOE, AND ABC INSURANCE COMPANY

\*     NO. 2022-CA-0800

\*

\*     COURT OF APPEAL

\*     FOURTH CIRCUIT

\*     STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-00471, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge Tiffany Gautier Chase)

Jacques F. Bezou
Jacques F. Bezou, Jr.
Payton S. Lachney
BEZOU LAW FIRM
534 E. Boston Street
Covington, LA 70433

     COUNSEL FOR PLAINTIFF/APPELLANT

Lorraine P. McInnis
BERRIGAN LITCHFIELD, LLC
111 Veterans Memorial Boulevard, Suite 1720
Metairie, LA 70005

     COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED IN PART; VACATED IN PART; REMANDED**
**MAY 31, 2023**

This is a claim against a nursing home. Plaintiffs/appellants, Lisa Richard, Brenda Lemoine, Lori Gutierrez, Richard Troxclair, and David Troxclair (collectively, the "Troxclairs"), appeal the September 13, 2023 judgment of the district court, which granted an exception of prematurity in favor of Notre Dame Health System and Chateau de Notre Dame Facilities Corporation d/b/a Our Lady of Wisdom Health Care (the "Nursing Home"). The judgment dismissed the Troxclairs' claims without prejudice pending the conclusion of their Patient's Compensation Fund claim. For the reasons that follow, we affirm in part, vacate in part, and remand this matter for further proceedings.

## FACTS AND PROCEDURAL HISTORY

The Troxclairs brought this litigation individually and on behalf of their deceased mother, Sylvia Troxclair, who sustained injuries on July 15, 2021 while a resident of the Nursing Home. On January 19, 2022, the Troxclairs filed a petition for damages in the district court, alleging that Sylvia Troxclair was receiving a bed bath by a nursing aid when she was dropped onto the floor, resulting in a puncture

1

wound, bleeding, bruising, and fracture to her left leg. According to the Troxclairs, she was then placed back in her bed by nursing staff, where she bled profusely throughout the night. The following day, she was transported and hospitalized for her injuries, and thereafter, on July 22, 2021, she died.

On June 14, 2022, the Troxclairs filed a medical malpractice claim against the Nursing Home with the Louisiana Division of Administration, Patient's Compensation Fund in connection with the same incident at issue in this litigation.

On July 11, 2022, the Nursing Home filed a dilatory exception of prematurity in the district court, arguing that the Louisiana Medical Malpractice Act ("LMMA") covers the Troxclairs' claims against the Nursing Home, and that the petition for damages is premature until a medical review panel has convened and rendered a decision on the claim. On September 1, 2022, the Troxclairs filed an opposition to the exception, contending that allowing Sylvia Troxclair to fall while bathing is general negligence, which falls outside of the ambit of the LMMA.

On September 9, 2022, a hearing went forward on the exception of prematurity. On September 13, 2022, the district court rendered judgment granting the exception of prematurity and dismissing the lawsuit without prejudice, pending the conclusion of the Patient's Compensation Fund claim. This appeal followed, wherein the Troxclairs set forth one assignment of error as follows:

> The trial court erred in finding that a claim for the failure of a nurse's aid in a nursing home to prevent a resident from falling implicates the Louisiana Medical Malpractice Act.

## LAW AND ANALYSIS

**Dilatory Exception of Prematurity**

The standard of review of a judgment granting an exception of prematurity is generally manifest error, but where a purely legal question is presented, the judgment is reviewed *de novo*. *Doe v. Jesuit High Sch. of New Orleans*, 21-0284, pp. 3-4 (La. App. 4 Cir. 11/10/21), 331 So.3d 426, 429. The burden of proving prematurity is on the exceptor, "who must show that it is entitled to a medical review panel because the allegations fall within the LMMA." *Watson v. Woldenberg Vill., Inc.*, 16-0159, p. 4 (La. App. 4 Cir. 10/5/16), 203 So.3d 317, 321. Where no evidence is introduced at the hearing, the district court "must render its decision on the exception based upon the facts as alleged in the petition, and all allegations therein must be accepted as true." *LaCoste v. Pendleton Methodist Hosp.*, L.L.C., 07-0008, p. 8 (La. 9/5/07), 966 So.2d 519, 525.

**Louisiana Medical Malpractice Act**

Under the LMMA, a medical malpractice claim against a private qualified health care provider is subject to dismissal for prematurity if it has not first been presented to a medical review panel. *Watson*, 16-0159, p. 4, 203 So.3d at 320.

The LMMA defines "malpractice" as:

> any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, **including failure to render services timely and the handling of a patient, including loading and unloading of a patient**, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision

3

of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

La. R.S. 40:1231.1(A)(13) (Emphasis added).

"Tort" is defined under the LMMA to mean:

> any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.

La. R.S. 40:1231.1(A)(22).

"Health care," under this section, means:

> any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.

La. R.S. 40:1231.1(A)(9).

A nursing home is a qualified health care provider under the LMMA. La. R.S. 40:1231.1(A)(10).

In *Coleman v. Deno*, the Supreme Court outlined a six-part test to determine whether a negligent act falls within the LMMA. 01-1517 (La. 1/25/02), 813 So.2d 303. The six *Coleman* factors are:

(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;

4

(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;

(3) whether the pertinent act or omission involved assessment of the patient's condition;

(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;

(5) whether the injury would have occurred if the patient had not sought treatment; and

(6) whether the tort alleged was intentional.

*Id.*, pp. 17-18; 813 So.2d at 315-16. "If the allegations sound in medical malpractice, the case must proceed in accordance with the protocol set forth in the [LMMA]." *Blazio v. Ochsner Clinic Found.*, 19-0753, p. 6 (La. App. 4 Cir. 3/4/20), 294 So.3d 36, 41. "If, on the other hand, the allegations sound in general negligence, the case should proceed under general tort law." *Id.* We examine each of these factors.

**Whether the particular wrong is "treatment related" or caused by a dereliction of professional skill**

The petition reflects that more than one "wrong" is alleged. The Troxclairs' allegations fall into two main categories: (1) allowing Sylvia Troxclair to fall from her bed; and (2) failing to timely provide her with appropriate care after she fell. Taking the allegations in the petition as true, we are unable to say whether the fall took place in the course of medical treatment. Nothing is alleged with respect to a plan of treatment encompassing a bed bath, and no evidence was introduced at the hearing. Our jurisprudence has observed:

> while a nursing home resident can always be said to be "confined" to the nursing home, the resident is not always receiving medical care or treatment for any specific condition. *Richard v. Louisiana Extended Care Centers, Inc.*, 2002-0978, p. 12 (La. 1/14/03), 835 So.2d 460, 468. "[I]t was not the intent of the legislature to have every 'act, ... by any health care provider ... during the patient's ... confinement" in a nursing home covered by the MMA. *Id.* Rather, to be covered by the LMMA, the alleged negligent act must be related to the nursing home resident's "medical treatment" under Louisiana law "rather than 24-hour custodial shelter." *Id.*, at pp. 13-14, 835 So.2d at 469.

*Watson*, 16-0159, p. 6, 203 So.3d at 322 (footnote omitted). The Supreme Court observed that a nursing home's alleged act of negligently allowing a resident to fall from a wheelchair involves the "handling of a patient, including loading and unloading of a patient," which falls under the LMMA's definition of "malpractice." *Richard*, 02-0978, p. 12, 835 So.2d at 468; *see also* La. R.S. 40:1231.1(A)(13). Nevertheless, for coverage under the LMMA, the negligent act must be related to medical treatment. *Id.*, 02-0978, p. 13, 835 So.2d at 468. Acknowledging that the party urging the exception of prematurity bears the burden of proof, the Nursing Home has not shown that the fall itself occurred during treatment.

Even so, we cannot overlook that the petition's theory of liability is premised on a failure to render medical treatment after the fall. The Troxclairs specifically allege that the Nursing Home and its employees breached their duty of care to supervise its residents by:

6

4. Failure to accurately assess the condition of Ms. Troxclair following her fall;

5. Failure to contact Ms. Troxclair's personal physician immediately upon her fall;

6. Failure to recognize the need for and call for immediate medical treatment upon observing a bone protruding from Ms. Troxclair's knee;

7. Failure to increase staff surveillance of Ms. Troxclair after her fall and injury;

8. Failure to promptly transport Ms. Troxclair to a hospital for emergency treatment; …

The petition further alleges that the Nursing Home breached its duty of care to supervise and train its employees:

4. By failing to increase staff surveillance of an injured resident;

5. By failing to timely assess for injuries;

6. By failing to provide immediate treatment intervention to an injured resident;
…
8. By failing to ensure that nurses and nurse aides have the appropriate competencies to care for every resident in a way that maximizes each resident's well-being; …

The LMMA explicitly defines "malpractice" as "including failure to render services timely." La. R.S. 40:1231.1(A)(13). "Health care" is defined as "any act or treatment … which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement…" La. R.S. 40:1231.1(A)(9). The Troxclairs' allegations of failure to render medical care after the fall are treatment related and meet the first factor of the *Coleman* test.

**Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached**

We cannot say on the facts alleged whether an expert is required to discern the standard of care or breach with respect to a fall during a bed bath. However, regarding failure to timely render medical care after a fall, one court deduced that "questions concerning the alleged insufficiency of treatment following the incident are questions which suggest that expert medical evidence is required to determine whether the appropriate standard of care was breached." *McLemore v. Westwood Manor Nursing & Rehab., L.L.C.*, 37,450, p. 6 (La. App. 2 Cir. 8/20/03), 852 So.2d 1170, 1174. We see no reason to find otherwise in the present appeal. The question of sufficient medical treatment after a fall is not one that can be assessed using a factfinder's common sense and everyday experience. *Contrast Watson*, 16-0159, pp. 8-9, 203 So.3d at 323. We find that expert medical testimony will be necessary to identify the appropriate standard of care for a nursing home and its employees to abide by after a fall and to evaluate whether the alleged failure and delay in rendering care breached that standard of care.

**Whether the pertinent act or omission involved assessment of the patient's condition**

The petition for damages explicitly alleges that the Nursing Home and its employees failed to "accurately assess the condition of Ms. Troxclair following her fall"; failed to "recognize the need for and call for immediate medical treatment upon observing a bone protruding from Ms. Troxclair's knee"; and failed to "timely assess for injuries." The petition's allegations satisfy this factor.

8

**Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform**

Sylvia Troxclair was at all times a resident of the Nursing Home and was receiving a bed bath from one of its nursing aids. The petition does not indicate that a physician was present or whether the bed bath encompassed any treatment beyond typical custodial care. Nevertheless, assessing the injuries and administering or arranging for treatment of an injured resident is within the scope of activities that a hospital or nursing home is licensed to perform. This factor thus weighs in favor of satisfying the *Coleman* test.

**Whether the injury would have occurred if the patient had not sought treatment**

This Court has found this factor "inapplicable … in a nursing home context" where "the injury occurred not during the course of treatment delivery, but during [plaintiff's] custodial care in the home." *Watson*, 16-0159, p. 10, 203 So.3d at 324. Nevertheless, as the Supreme Court acknowledged, "[c]ommon sense indicates that a claim based on failure to provide enough treatment is clearly linked to treatment." *Coleman*, 01-1517, p. 22, 813 So.2d at 318. This factor is satisfied with respect to allegations of insufficient treatment, but again, we are unable to say from the allegations whether Sylvia Troxclair's fall took place in the course of treatment.

**Whether the tort alleged was intentional**

The petition contains no allegation that the fall or failure to recognize and treat the injuries was intentional, thus satisfying this factor. *Coleman*, 01-1517, p. 22, 813 So.2d at 318.

"The LMMA and its limitations on tort liability for a qualified health care provider apply only to claims 'arising from medical malpractice;' all other tort liability on the part of the qualified health care provider is governed by general tort law." *Burandt v. Pendleton Mem'l Methodist Hosp.*, 13-0049, p. 6 (La. App. 4 Cir. 8/7/13), 123 So.3d 236, 241 (citation omitted). This Court recognizes that the LMMA's limitations on the liability of health care providers are special legislation in derogation of the rights of tort victims. *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 04-0451, pp. 7-8 (La.12/1/04), 888 So.2d 782, 787-88. Its language, therefore, must be strictly construed, and any ambiguity must be resolved against coverage by the LMMA. *Id*. Considering the petition only and in the absence of any evidence introduced on the trial of the exception, we are unable to determine whether the allegations that Sylvia Troxclair was negligently allowed to fall from her bed constitute allegations of medical malpractice under *Coleman*. On the other hand, the allegations of failure to timely render adequate medical services are undoubtedly treatment-linked and fall within the ambit of the LMMA. *See* La. R.S. 40:1231.1(A)(13).

Two Supreme Court cases guide us in resolving this matter.

The Court recognized, in *Blevins v. Hamilton Med. Ctr., Inc.*, 07-127, pp. 1-2 (La. 6/29/07), 959 So.2d 440, 442, that an exception of prematurity can be granted in part and denied in part where certain allegations sound in medical malpractice while the remaining allegations sound in general negligence. Therein, the Court reinstated the judgment of the district court, which found that three of the petition's nine allegations fell outside of the LMMA, severed those claims, and allowed them to proceed separately from those for which a medical review panel was required. *Id.*, 07-127, pp. 11-12, 959 So.2d at 447-48; *see also Blazio*, 19-0753, pp. 9-10, 294 So.3d at 43.

In *Richard*, 02-0978, p. 13, 835 So.2d at 469, the Court could not determine, based on the record, whether a resident was "placed in the nursing home for any specific treatment of a particular condition, rather than 24-hour custodial shelter, or whether [the resident] was on her way to or from any medical treatment when the accident occurred." The Court deemed it necessary to "remand this case to the trial court for a determination of whether the allegations that [the resident] was negligently allowed to fall from her wheelchair constitute allegations of medical malpractice under *Coleman*." *Id.*

Examining these cases together, we conclude that the proper remedy is as follows. First, we find that the allegations concerning failure to render medical treatment after the fall are allegations of medical malpractice, and the district court properly found those allegations premature until such time as a medical review panel has reviewed those claims. We affirm, in part, the judgment of district court

11

granting the exception of prematurity as to those claims. Second, we are unable to say whether Sylvia Troxclair's fall occurred within the course of medical treatment. We vacate, in part, the district court's judgment insofar as it grants the exception of prematurity as to the allegations of negligently allowing Sylvia Troxclair to fall, and we remand this matter to the district court for a determination of whether those claims of negligence are medical malpractice claims under Louisiana law.

## CONCLUSION

Accordingly, for the reasons set forth in this opinion, the judgment of the district court is affirmed in part, vacated in part, and this matter is remanded to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART; VACATED IN PART; REMANDED**